Good morning and welcome. Judge McEwen, Judge Johnstone, and I are so pleased that you're here. Thank you for coming to the San Francisco Courthouse. We have already submitted on the briefs and record Next Level Ventures v. Avid Holdings Ltd. So that case is submitted. We have two cases on argument for the 9 a.m. calendar. Let's start with Woody v. Coinbase. How much time would you like to reserve for rebuttal? Five minutes. Five minutes. Okay, go ahead, please. May it please the Court. To begin, this Court should rule the arbitration provisions of either UA as unenforceable. However, given that Bielski in this Court and Suskie in the Supreme Court was decided after the District Court opinion, at minimum the Court must remand with further instructions to the Court. I want to start with the Supreme Court and Suskie. I just want to ask you about that. Isn't this a legal question? Well, it is a legal question, Your Honor, in terms of— Why would we remand? Maybe you can explain that. Well, not necessarily—well, I don't think the Court should remand. I think the Court should make the decision now. But I think if the Court doesn't want to go that far, it can ask the Court to re-decide in light of the new opinions afterwards. But I think the Court should make a decision here. And if we do that, then we'll be back here a year from now, right, one way or the other? It depends. It depends on what the District Court will ultimately decide based on the Court's ruling. But it's a potential possibility, Your Honor. I wanted to start in Suskie where the Court says, contrary to what Coinbase is arguing, is that when we have two contracts here, one that sends arbitrability to the arbitrator— But if we disagree with you that there's a distinction between the delegation clauses in the two different user agreements, then would you concede that Suskie doesn't apply? I'm sorry, can you repeat that, Your Honor? If we view the two 2017 and 2022 agreements as not being materially different for purposes of the dispute here, then would you concede that Suskie does not apply? It would apply in the sense that we still need to determine which contract applies. Fundamentally, which— But why does that matter if we're saying the terms at issue are materially indistinct? Because each contract has different obligations and different rights to the user. The flair airdrop might not even be covered under the 2017 agreement. And we also have the carve-outs in the 2022 agreement. So that's why it's important to figure out which one applies. It would be difficult for the Court to come to that conclusion, however, because 2017 is delegation by incorporation of the AAA rules. Here in the 2022, Coinbase has already conceded incorporation by delegation has been negated. So we're dealing with the delegation provision in Section 1.6 of the arbitration agreement. And so that's why I think it would be hard to come to that conclusion. But then if the Court did come to that conclusion, we'd be going back to the 2017 delegation provision that the district court ruled is what is at play in this situation without determining which version of the agreement applied. And I guess I would move on to that delegation provision. So if we're talking about 2017, the issue is does the level of sophistication of these consumers matter? And that question is ripe for the Ninth Circuit. It has not decided that question yet. And I think the ICE case, E-I-E-S-S, by Judge Chen in the Northern District of California, did a good job summarizing that. The majority of lower courts now in the Ninth Circuit have held that incorporation of the AAA rules is insufficient to establish clear and unmistakable evidence of delegation in a consumer contract involving one unsophisticated party. And again, the district court did not really address, well, it raised or at least wrote down the words unsophisticated party, but didn't really address it in any substance. And I think Judge Chen did a good job of bringing out the problem, which is that for an unsophisticated consumer to discover the agreement to delegate, they have to first find the relevant spot in the arbitration provision, then find the reference to the rules, in this case AAA, then go to AAA and find those rules, then find the delegation provision, and then understand the importance of it. And I think that's why you see more district courts and California state cases saying— Can we talk about Spazzeri? Yes. You say that there is a distinction between when the parties agree to arbitration and when they don't. So in some instances, depending on that issue, Spazzeri would apply or wouldn't. And I don't see where in Spazzeri that distinction is made. Can you point to— I think this would be a good strategic retreat to the truth, Your Honor, in that Spazzeri, for whatever reason, Coinbase decided not to cross-appeal that. They had the opportunity. Obviously, it was appealed by the parties in Spazzeri. So that argument is simply waived from all of us. Why shouldn't we recuse it? You filed your reply brief after seeing the 28J. You both addressed it. It's before us. Why doesn't the statute require us to vacate? Well, Your Honor, because the problem is that just wasn't before the court on the appeal. So all I can say is— It was. Now it is. You spent a page on it. They spent a couple pages on it. That's enough for us to consider it. Can you make another argument on the merits? Well, the only argument on the merits, Your Honor, is just that we have a two- or three-page opinion in Spazzeri that basically says both parties have no conflict at all with the arbitration provision. There was no dispute whether it applied at all. Just for the Supreme Court to kind of sweep away all of the case law on objecting to motions to compel arbitration in that two- or three-page opinion doesn't seem like that was before the court, and it seems like it was outside the scope of what they were considering. So you're basically telling us that we should ignore that section because it was brief? Not because it was brief. Just, Your Honor, the only argument I can make is that it wasn't brought up properly on appeal before the court. It wasn't cross-appealed by Coinbase. Well, that's different than the Spazzeri argument that I thought you just made, that there's not much here for us to consider. Well, in that situation, all I can say again, Your Honor, is that Spazzeri is just limited to the facts of the case, which is two parties agree to the arbitration. Well, I guess Spazzeri is about Section 3. Can you make an argument under Section 3 that it doesn't mean what it says? Shall, on application of one of the parties, stay trial of the actions? Spazzeri undermined all of our prior precedent on this question. So what part of that shall, on application of one of the parties, stay the trial of the action doesn't apply here? Well, I think, and I'm sorry, Your Honor, I don't know if this is Section 3 or Section 4, but in one of those sections, the court is supposed to provide, at minimum, a hearing on the issue of arbitration. And so we didn't get that in terms of that goes into the limited discovery that we've argued. But I would have to say that it would be difficult for plaintiffs if we were back in front of the district court with Spazzeri and that case concluded and the court obviously stayed pending arbitration. I would not be able to make a very compelling argument at that point. Why wouldn't your arguments, going now to the merits of the delegation, your arguments about arbitrability swallow the arbitration clause? Isn't the question about even which agreement controls a question of arbitrability covered by delegation? Yes, Your Honor, and that really depends on which agreement we're even talking about, because if we look at the 2022 UA, we've got, and I want the court to realize that the contrary to what Coinbase argues, this isn't the arbitration provision. This is Section 1.6 in the arbitration agreement that says, quote, the authority of the arbitrator. The arbitration agreement starts at Section 1.1 that lists what the scope of arbitration is. So the authority of the arbitrator, this whole 212-word sentence is a delegation provision, and lower courts have held that when you have one sentence and then you have this modifying phrase, accept the following, and then you list it, it's applying to both in the Hahn and the McGuire case, as to this proposition, is that when you have these, this is going to apply to both delegability, arbitrability, and the scope of the arbitration. Coinbase could have easily, and it did in the 2021 UA, and the comparison on page 27, our opening brief, I think summarized this well, they could have put the period at the very beginning of that first sentence, stopping everything, making it clear that delegation was an all-encompassing aspect, but they put the exceptions, the four exceptions. And it doesn't also kind of make sense because it's very clear, for example, which version of the arbitration agreement applies is decided by a court. Why do we send that to the arbitrator to decide that needs to go back to the court? I mean, at minimum, that would go to procedural unconscionability of the provision itself. You make a surplusage argument with regard to this 1.6 section. Can you identify exactly what is the language that you think is surplusage? It's the entire exceptions, Your Honor, because if those entire exceptions. One through four. One through four. Okay. Because if those exceptions don't go to both the scope of arbitration and the delegability, then it's basically rendered meaningless because if you go to section 1.1 of the arbitration agreement, there's also exclusions for small claims court and trademark infringements. So why are these exceptions not put over there in section 1.1? Again, this is section 1.6, authority of the arbitrator. The whole sentence is based on delegation. I think I'm at the end of my time. All right. Thank you. You have four minutes and 56 seconds. Good morning. May it please the Court. Stephen Raglin with Kecker, Van Ness, and Peters on behalf of appellees, who I'll collectively refer to as Coinbase. I may also at times refer to appellants as plaintiffs given their posture below. This case here in front of this Court begins and ends with Sposiri, which was decided on May 16, 2024, while this appeal was pending. Pursuant to Sposiri, this Court has no appellate jurisdiction to adjudicate the merits of what happened below. I guess you used the word jurisdiction. How do we know this is jurisdictional? We've been trying to be a little bit more precise given some of the Supreme Court's guidance here. What in the FAA makes this jurisdictional? Section 16A3 of the FAA provides for the jurisdiction here. That is specifically and explicitly the only basis for jurisdiction before this Court. That provides that an appeal may be taken from a final decision with respect to an arbitration that is subject to this title. So a dismissal is a final decision? Correct. And even Sposiri says under Section 16 that the final order is immediately appealable. Yes. Then why don't we have jurisdiction over everything? Well, Your Honor, jurisdiction as the merits disappeared with Smith v. Sposiri when it was decided because what Judge Donato did below was everything right except for dismissal instead of staying. He actually dismissed pursuant to Forrest v. Sposiri, which was the then-controlling Ninth Circuit authority that said he had that discretion. That, of course, went up as Smith to the Supreme Court. The Supreme Court said Section 3 of the FAA means exactly what it says. There's no discretion for the district court. And so what Sposiri did was reverse, remand, and then it needs to enter a state. So that's really, with clear jurisdictional language, which we have, what Sposiri did really was to change what then is the status of the case in the district court. Yes, Your Honor. And all you're asking us to do is basically remand for entry of a stay. Is that correct? Yes, Your Honor. We believe the correct approach is to remand to the district court with instructions to enter a Section 3 of the FAA stay pending arbitration. Mr. Raglin, I guess I see your argument with respect to Section 16 and appellate jurisdiction, but with respect to are you contending that Section 3 does contain jurisdictional language? Section 3. And that's the error that you're assigning to the district court that it shall have stayed. Section 3 actually divests the court or actually it doesn't provide for jurisdiction because what it provides is that upon being satisfied that the issue involved is referral to arbitration, on the application of one of the parties, the district court shall stay pending arbitration. Do we have to reach the jurisdictional question if we just excuse whatever waiver arguments might be there and just reach the merits that jurisdictional or not, the district court heard under Sposiri? Frankly, Your Honor, I think that would be an error because Smith v. Sposiri is very clear that jurisdiction and perhaps I misunderstood your question, but under Smith v. Sposiri, because the FAA Section 3 is mandatory to the district court, it may not dismiss. Absent the dismissal here, there would have been no basis under 16A3 to appeal and there's no other basis for appellate jurisdiction. Okay. So it's on – okay. So the jurisdiction is the appellate jurisdiction, not whether the district court itself had jurisdiction, which would be a strange way to describe a mandatory stay. Correct, Your Honor. Which keeps jurisdiction in the district court. Okay. I understand. Thank you. And arguments were made as to waiver. I'd like to address those. Obviously, I'm happy to answer any of Your Honor's questions. You know, I do have a question about 1.6. I'm having a difficult time of seeing how it doesn't limit the delegation provision. Certainly. So first, we believe that this doesn't need to be reached, but we've hoed that row. We can go on. Every court that has looked at this provision, 1.6, in the 2022 user agreement, has held that it's clear and unmistakable that it's a delegation provision. That's Judge Donato here, Judge Chesney in the Pearl v. Coinbase case, Judge Thompson also. Right. Okay. Let's say 1.6 is a delegation provision. What says that the four exceptions only modify the arbitration clause and not the delegation provision? That's where I'm having difficulty because it looks like, to me, it's limiting the delegation provision. Well, we laid this out, Your Honor, in our briefing, and the issue is that Section 1.6 is titled Authority of the Arbitrator. It speaks to two authorities that the arbitrator has. One is the type of dispute that the arbitrator may preside over, and the second is who decides what gets arbitrated. Both of those are delegated in 1.6. So reading that, it reads that the arbitrator shall have the power to adjudicate all disputes, including without limitation. Without limitation is key. Including without limitation, arbitrability. Except here's four issues that are not within the scope of the arbitrator's power to adjudicate. So there's two things happening, scope and who decides. The four exceptions go to the scope of what may be before the arbitral forum. But the delegation provision. Well, what if I disagree with you and say, no, you just told me. This is saying what has been delegated to the arbitrator, and these are four exceptions to that delegation. That's the way it reads to me, but please explain. Sure. I would disagree with you, Your Honor, but I know how much power that gives me. No, but the reason is the other cases that have looked at a similar structure all deal with an arbitration provision that has a delegation pursuant to reference to the AAA rules. For example, the Hahn case, which was, you know, magistrate judge below the other cases, all look at a situation that says all disputes will be arbitrable except for the following, and the AAA rules apply. That's where the delegation is. Here we have an explicit delegation. It's not by reference to the AAA rules. In 1.6 it says that all of these get decided by the arbitrator. Well, it may be explicit, but it also could be ambiguous. I'm thinking this isn't an issue here, but exception three, all disputes about whether a party has satisfied any condition precedent to arbitration shall be decided only by a court of competent jurisdiction. Is it not odd to have an arbitrator decide whether a condition precedent to arbitration has been satisfied? I'm not sure that is, Your Honor. For one, this is the bargain the parties made, and this is what they agreed to. Well, that's the question. Fair enough. But I see it akin to the fact that the court will decide if a contract was formed. That's in many ways a condition precedent to arbitration. Did the parties enter into a contract with an arbitration clause? That is specifically for the court to decide. This is no different than that. This is something that the court decides as a threshold matter, and everything else goes to the court. I think that's your friend's argument. If the court decides that as a threshold matter, then we're— It decides it as a merits matter, rather. I'm sorry, not a threshold matter. It decides as a merits matter ultimately what happens. So how does this work? Walk me through. We've obviously got a very strong policy in favor of arbitration. A stay is issued. It goes off to the arbitrator. And all of these, the condition precedent, the arbitrability, all of these threshold issues are then subject to arbitration and then come back after the full arbitration for a court to decide that it was all a waste of time. Not exactly, Your Honor. What would happen is if the stay had been properly entered, it would then go to AAA. The arbitrator, the plaintiffs could then bring whatever motions they want to say this falls within any of the four buckets that are accepted for the court. And therefore, arbitrator, you should send this back to Judge Donato because this falls within bucket number two. The arbitrator makes that decision and may well send it back to the court if it falls within that. That is about the arbitrator determining his or her scope. Authority versus delegation. Correct, Your Honor. Would you touch on the sophisticated versus the unsophisticated issue? Certainly. And a little Ninth Circuit proviso of this only applies to this case or we're only deciding this case.  Right, Your Honor. Yes. In Brennan, they specifically did say, of course, we're not saying it doesn't apply to unsophisticated. We're just dealing with sophisticated here. Well, first, it's important in thinking about the sophistication issue that there actually was no challenge. This has been waived. Because below, the plaintiffs did not address any issue, did not present any evidence as to their sophistication or lack thereof. All there was was one reference in a footnote in their motion to compel arbitration, opposition, that Coinbase hadn't presented sophistication evidence. But that's not effective. As determined in — forgive me, Your Honor. Let me just — Well, what about in these declarations, they say there was nothing indicating I was waiving my rights to a jury trial, waiving my rights to participate in class action. I didn't even know what arbitration was until Coinbase filed this motion to compel. That's Dallas Woody's declaration. I mean, why wouldn't this satisfy at least raising the issue of sophistication? Well, Your Honor, because they don't actually raise the issue of sophistication. What the delegations say is, ah, the user agreement doesn't look like what I remembered. I'm not really sure this happened. There's no definitive declaration of that. They maybe say, oh, I don't know what the arbitration was. No, it says, I didn't even know what arbitration was until Coinbase filed this motion to compel it. I mean, Mr. Woody is not a lawyer. Why is he not unsophisticated? Well, because they didn't make that argument, Your Honor. They didn't say that that equals — that's the reason why we are not sophisticated and that's why we should fall into the, I guess, Brennan exception that doesn't exist yet or that this Court should decide that issue. But importantly, there's nothing in the record about their nonsophistication specifically. For example, in Phil Lowe's case, Phil Lowe-Falcon v. Amazon, the Ninth Circuit commented that the appellants had raised the sophistication issue, but they didn't actually present any confident evidence below. That statement is not confident evidence. That's just a statement, oh, I didn't know what it was. It's not specifically saying, I am not — I've never — you know, I did not know about how this worked. I didn't know how to read. Whatever the sophistication may be, that's not the issue. Or here's my background and why I didn't. Exactly, Your Honor. And also, the Patrick — I'd advise the Court to look at, or I'd point the Court to Patrick v. Running Warehouse, where this Court said that on appeal where the plaintiff asserted a lack of sophistication, they offered no evidence concerning the sophistication or lack thereof. And so there's no evidence offered here. Also, there was a waiver because, at most, it was raised in a footnote, and there's — as we explain in our brief, that's not sufficient to preserve. So one of the unconscionability claims that the plaintiffs make is as to batch arbitration, where if there are a hundred or more, I guess, individual claims, they will be consolidated before one arbitrator. It does seem like it's a backdoor to class actions, but it just allows you to go before an arbitrator instead of a judge and makes it much more expensive, I assume, for plaintiffs' counsel to litigate this. Why is this just not a backdoor class action? You're going to take a hundred individual cases, consolidate them before one arbitrator? That issue is not relevant to this case, Your Honor. This is not a batch arbitration case. It's not alleged to be. But that's what they're claiming is unconscionable, right, is the batch arbitration. They make no argument that it applies to them or that it has any effect on them whatsoever. But what's your response? They've made the argument. I mean, obviously it's not clear whether we're even going to address this ultimately because of Spirizzi, but what's your response? Because they do make an unconscionability argument as to that 1.8 provision. Well, the issue with that is that argument is not directed at the delegation provision. That is directed at the arbitration agreement as a whole. They don't specifically say why that affects the delegation provision. And under Bielski and PrimaPaint and Rent-a-Center, they have to specifically challenge the delegation provision with their arguments and not just make general arguments that apply to the arbitration agreement as a whole. Here they didn't do that. They made arguments specifically about the user agreement. And at 2 ER 154 to 157, which is their opposition to the motion to compel arbitration, each of the topic sentences talk about the user agreements are this, the user agreements are that. Other sections, 1.8 and 1.4 of the arbitration agreement is this or that. There's no specific challenge to the delegation provision. So as Judge Donato held correctly, they failed to challenge it effectively. What should we do if we find the delegation provision ambiguous? I mean, you've color-coded it. It's a single sentence. I'm guessing you may not draft it again if you had the opportunity in quite the same way. Well, again, with the caveat, the Spazzieri caveat, remand to Judge Donato for further interpretation because he did not specifically address that. He found that they were clear, unmistakable, and enforceable. Other courts within the circuit have found the same. However, if further analysis is required, then I think Judge Donato can perform that analysis. Can we get back to Bielski? I mean, I see what you're saying about you have to specifically mention a provision that you're challenging. But there's also language in that same decision saying that when you're a court evaluating an unconscionability challenge to a delegation provision, you can look at the provision in context of the agreement as a whole. And at least Mr. Woody is claiming, well, I did do that. Well, Your Honor, I think we have to go back to Prima Paint and Rent-a-Center, where the Supreme Court said that in Prima Paint, the arbitration clause is a severable contract within a contract. You look at that without regard to the overall contract. Then they took that in Rent-a-Center and said the delegation provision within an arbitration agreement is also a severable contract within a contract. So you look at that. And so challenges to the overall arbitration agreement are not sufficient to challenge the arbitration provision because under Rent-a-Center, Prima Paint, and Bielski now, those have to be challenged specifically with specific arguments directed towards that provision. And that wasn't done here. Instead, they said generally that there's unconscionability that relates to the user agreements as a whole or the arbitration agreement sections that are not Section 1.6, which is the delegation provision, and never said that because Section 1.6 delegation provision says the arbitrator should have the power to determine his or her own jurisdiction, that's unconscionable because of A, B, or C. They never said that. So they didn't sufficiently challenge it. And that's where we are with Bielski. So Bielski recognized that the same arguments that apply to the arbitration agreement as a whole might apply to the delegation provision and can be argued. However, it emphasized that still the challenge must be directed towards specific provisions of the delegation provision. And that just wasn't done here. You are two minutes over your time. Let me see if my colleagues have any. Does the court need anything on waiver because I have tones? No, thank you. Thank you. There's a few things I want to address to the court. First, because I'm really stressing that the court should not divest itself of jurisdiction, I want to bring the court's attention to the fact that it would be a manifest injustice to follow Spirisi in light of the fact that both Spirisi and Bielski came after the district court opinion because if the court follows Spirisi, the district court, we never got our chance for the judge to follow Bielski either. Mr. Rispoli, that's a question of timing, not of whether we could get to it eventually under the FAA. We just can't get to it now. Well, the problem is that initially every plaintiff has a right to challenge the delegation provision, and the court didn't address that provision in light of what the Bielski ruling was. So the court, at minimum, plaintiff is owed their right to have that analysis. And I want to say that it's very clear that plaintiffs did challenge the delegation provision in the context of all the other provisions as Bielski set forth, which is that if you have a defined term, you have to look at that in the context of the delegation provision. And we've got in the delegation provision what is a, quote, dispute, the arbitration agreement, waiver of class and other non-individualized relief, batch arbitration. These are all provisions that are defined in the delegation provision itself, and that's a reason that they're so substantively unconscionable. I want to say with the exclusions – Which ones are you – which exceptions are you claiming are the best fit for your case? Well, for sure it's batch arbitration. First, it's – What's your response to your friend's argument that it's not an issue? Well, it's somewhat ridiculous to say that we're not in a batch arbitration because this is a class action. We are, by rule, FRCP23A1, not allowed to list the thousands of people that are involved in this class action. That's the numerosity requirement. So we just have two reps. It's disingenuous from Coinbase because they know exactly how many XRP holders they have, and they know exactly everybody that was entitled to the Songbird airdrop, and they know it's well over several thousand. So this case would clearly be in the batch arbitration situation. And, again, that's another reason why we would need limited discovery, if we even go backwards, again, for the court as an initial matter, when we have such sharply contradicting declarations. Because, as the court mentioned, the declarations go to a lot of specific issues, which is that both said, first of all, we don't know what arbitration is or these technical terms, but they could not manage the technical problems with the Coinbase user interface. They struggled with technical support. They didn't understand the technical pros of the UAs. And they've also put in their declarations. Does that mean they're technologically unsophisticated or legally unsophisticated if they can't figure out the user interface? Well, it goes for evidence. It matters here. It goes to evidence of both, because we're talking about the sophistication in the context of being able to agree or even assent to these problems or even use the platform. Well, I think there's quite a difference between understanding the agreement and having problems with platform and technical access. And that's really what the bulk of that talks about. That goes to their claim, like, we really can't use and access this platform. That's not the same as I'm unsophisticated as far as the arbitration agreement is. Well, that's true, Your Honor, but then there's no problem at all because both declarants have no idea what arbitration is or the technical terms that are listed in the arbitration agreement. So that aspect would already be satisfied. And I would say in the cases that we've cited in our reply at 16 through 19, in the opening at 21 to 23, we've got unsophistication determined for mobile phone customers, bank customers, franchisees, music teacher and an architect, personal genetics consumer, employees, cooks. So I think that minimum case is met. I do want to quickly say with the exclusions in the Coinbase agreement, counsel stated that every court that's reviewed this has said, oh, these exclusions are not going to delegation. That's not exactly true. In the cases in those Coinbase cases, and this is in page 31 of our opening brief, they never actually addressed that issue because, again, this was pre-Bielski. They said we're not going to get to the delegation provision or we're not going to get to these substantive questions because the delegation provision wasn't properly challenged. So this has never actually been fully addressed by the court. And I think just the discussion about all of these issues, the color coding, the negation of AAA versus Section 1.6 and 22, this is a summary judgment standard for motions that compel arbitration in the Ninth Circuit, and it's not clear and unmistakable evidence. And at minimum, we have the conflicting issues with Discovery and we have this third-party agreement between Coinbase and Flare Networks that we've never had the opportunity to discuss or even get in Discovery. It is not true that what Coinbase provided in their reply is the only agreement in a $10 million-plus financial transaction between Coinbase and Flare Networks. With our public injunction question, I will just say, aside out from the briefing, that the Department of Financial Protection and Innovation in California— What you said was against California law, right? You said if the class size is big, that converts a private relief into public relief, but that's not what California Supreme Court law says, right? Well, it's not a conversion in that sense, but it's also not to the extent that the size doesn't necessarily matter. And what I mean— But I think there's California Supreme Court case law that says you don't look to the size of the class to determine whether relief is private or public. You agree with that, right? Yes, I do. And I would just say in brief that the Department of Financial Protection and Innovation has issued an injunction to Coinbase on similar but not identical behavior for cryptocurrency staking rewards, and they're saying, we are protecting the public, specifically public investors in crypto asset products. You're a minute and a half over your time. I'd like you to just do a quick wrap-up unless my colleagues have any other questions. Okay, if you could just wrap up, please. Sure. It's just if the court goes through it, we have to figure out under Suskie which contract applies, and if it's 2017, we've got the sophistication argument. If it's 2022, we have the clear and unmistakable delegation issue, and then we've got the unconscionability issue, most notably with the batch arbitration. And those are, you know, really the focus for the court, and I just don't think the court can use FRISI as a chance to get rid of jurisdiction here because of the nature and the way it was presented and also because we have the same issues with plaintiffs, and if we're going back in time doing that, we'd never have gotten their shot under Bielski for that type of analysis. All right, you're two minutes, 23 seconds over. Thank you. All right, thank you to both counsel. These were very helpful arguments. Thank you very much. Thank you.
judges: McKEOWN, KOH, JOHNSTONE